United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 24, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 25-36935** |
| **MICHAEL JAMES OLARIO** | § | |
| **ADRIENNE CHRISTINE OLARIO,** | § | **CHAPTER 7** |
| | § | |
| **Debtors.** | § | |
| | § | |
| **HESHAM EASSA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 26-3055** |
| | § | |
| **MICHAEL JAMES OLARIO AND** | § | |
| **ADRIENNE CHRISTINE OLARIO,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION**

Trial was held on August 24, 2026. The pro se defendant Michael James Olario ("Olario") appeared and testified, however, his spouse and co-defendant Adrienne Christine Olario failed to appear. The Court heard testimony from two witnesses, the plaintiff Hesham Eassa ("Eassa") and the defendant Olario. All the filed exhibits of both parties were introduced into evidence without objection. The Court bases this memorandum opinion on the testimony given and the exhibits referenced by testimony. The Court reiterates that it does not independently review exhibits introduced that were not referenced by testimony and that certain exhibits referenced in the Exhibit Lists at ECF Nos. 31, 32 and 35 were not filed on the record and therefore were not admitted into evidence.

The real property the subject of this adversary and the basis of the non-dischargeable damage claim of Eassa is 15007 Terrance Oaks Drive, Houston, Texas 77068, which was owned by Olario and his spouse prior to August 5, 2025, when it was foreclosed. At foreclosure the owner of the property became Federal Home Loan Mortgage Corporation which sold the property to Eassa at an online auction on September 16, 2025.[1] By Eassa's testimony he was the high bidder

[1] ECF No. 35-1.

and purchased the property for $360,000. Prior to its purchase he had only seen a picture or pictures[2] of the property from the outside [the front only] and he had no idea of the property's condition, especially on its inside. The Court holds that Eassa's knowledge of the property's condition at the time of his purchase was extremely limited. He had no pictures of the inside of the property, and he had not done a property inspection. The property's condition was therefore mostly unknown to him. He also purchased the property not knowing if the property was occupied or not. Olario claimed that it was, however, this was contested by Eassa who hired an investigator to determine if the property was occupied. The investigator did not testify, and the Court holds that actual occupancy is not relevant to its determination in this adversary proceeding. Whether the property was or was not occupied, Olario maintained control over the property until April of 2026.

Eassa attempted to evict Olario after he obtained ownership of the property and on November 18, 2025, Olario and his spouse filed a Chapter 7 bankruptcy[3] in order to thwart it. Eassa sought stay relief which was granted on March 11, 2026, and he was eventually evicted about nine months after foreclosure and about six months after the bankruptcy filing.

Eassa then filed this adversary case seeking a non-dischargeable judgment under 11 U.S.C. § 523(a)(6) claiming in part that Olario and his spouse "intentionally and willfully attempted to extort payment from Plaintiff in exchange for vacating the premises," "presented a false oath," and "willfully and intentionally damaged the property."

11 U.S.C. § 523(a)(6) encompasses a narrow class of tort liabilities in which the debtor's conduct was intentional and intended to harm an entity or its property. Negligence is not intentional but typically intentional torts (assault, battery, conversion) are willful and malicious. These must be the acts of the debtor and not third parties. The debt is nondischargeable only if Eessa was harmed by the acts. *In re Green,* 968 F3d 516 (5th Cir. 2020).

The code section requires a showing that the debtor intended to harm the plaintiff. *Kawaauhau v. Geiger*, 523 U.S. 57 (1998) (Debt arising from medical malpractice judgment, attributable to physician's negligent or reckless conduct, did not fall within willful and malicious injury exception to discharge).

---

[2] The evidence is unclear as to whether it was a single or multiple pictures of the front of the house. There was also no testimony as to when this picture or pictures were taken.

[3] Case No. 25-36935.

"Willful" means that there is objective substantial certainty of injury to subjective motive to injure. *Miller v. J.D. Abrams, Inc. (In re Miller),* 156 F.3d 598, 603 (5th Cir. 1998), *citing Kawaauhau v. Geiger*, 523 U.S. 57 (1998). "Malicious" means an act done with the actual intent to cause injury. *Id.* at 606. "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury.' Or Congress might have selected an additional word or words, *i.e.*, 'reckless' or 'negligent,' to modify 'injury.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

"Whether the acts were substantially certain to cause injury (the "objective test") is based on "whether the [d]efendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's *subjective* intent was to inflict a willful and malicious injury on the Plaintiff." *In re Powers*, 421 B.R. 326, 335 (Bankr. W.D. Tex. 2009). A subjective motive to cause harm (the "subjective test") exists when a tortfeasor acts "deliberately and intentionally, in knowing disregard of the rights of another." *See Miller*, 156 F.3d at 605-06 (adopting the definition of "implied malice" from *In re Nance*, 556 F.2d 602, 611 (1st Cir. 1977)) and *Lowry v. Croft (In re Croft)*, 500 B.R. 823, 860 (Bankr. W.D. Tex. 2013).

Olario did attempt to negotiate or extort funds[4] from Eassa by seeking a $17,000 payment[5] for his turning over the property in good condition with all appliances remaining.[6] This, however, does not fit within the exception to discharge set forth in 11 U.S.C. § 523(a)(6). This is not a willful and malicious injury and even if it was Eassa did not pay these sums to Olario. He did make a $2,000 counteroffer which was not accepted by Olario.

Olario may also have "presented a false oath," but again this does not fit within the exception to discharge set forth in 11 U.S.C. § 523(a)(6). "[P]resenting a false oath" is an exception to dischargeability as set forth in 11 U.S.C. §727(a)(4)(A). This was was not plead in this adversary proceeding and the time to raise such claim in an adversary complaint is now time barred.

---

[4] Depending on your point of view.
[5] What he called "cash for keys."
[6] Exhibit 31, page 16 of 18.

It is the third allegation against Olario that has merit that he "willfully and intentionally damaged the property." Olario claimed both in his exhibits and pleadings that he was a "[l]awful [o]ccupant" of the subject property." The Court disagrees with this claim. Olario lost title to the property at foreclosure. Under Texas law he became a tenant-at-sufferance after the foreclosure[7] and therefore he did not retain any ownership rights in the property.

Under the "objective test" the Court holds from a reasonable person's standpoint it is substantially certain that Olario's actions resulted in harm and are such that the court ought to infer that the debtor's *subjective* intent was to inflict a willful and malicious injury on the Plaintiff.

Olario offered "cash for keys" to Eassa and when it was unsuccessful willfully and maliciously removed appliances, allowed it to fall into disrepair and left it in an untidy state. This is especially true because on October 15, 2025, the utilities at the house were terminated. That Eassa continued to live in the property after this occurred is subject to debate and much speculation. From a reasonable person's standpoint if Olario intended to live in the property and keep it in a good state of repair the Court would have expected that utilities would have remained in place. They were not.

"[T]he standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. 279, 291 (1991). "Nondischargeability must be established by a preponderance of the evidence." *Countrywide Home Loans, Inc. v. Cowin (In re Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017).

The troubling issue before the Court is the measure of damages. Eassa claims damages totaling $61,500, including repairs to the physical structure, carpet and the pool but there was no evidence that most of these repairs were not needed prior to Eassa's purchase. He did not see pictures of the inside of the property or the rear of the property and did not conduct a property inspection prior to his purchase. He has no independent knowledge of most of the property's physical condition at its purchase. In simple terms Eassa assumed a great deal of risk in his online auction process as to not only the property's condition but also the risk of needing to evict its tenant-at- sufferance. Eassa assumes, perhaps reasonably that given Olario's actions between his purchase and eviction that he willfully and maliciously damaged the property after Eassa obtained ownership, but his reasonable assumption is not evidence and the Court cannot hold Eassa has met his burden of proof regarding most of the repairs for which he seeks a nondischargeable judgment.

[7] With very limited legal or equitable rights.

The Court can hold from the evidence that Olario removed items from the property including appliances and mirrors when he had no right to do so as a tenant-at-sufferance. Additionally, based on Eassa's review of a picture or pictures of the front of house that he damaged the property, both by breaking glass and removing a doorbell camera. The Court can also hold that Olario acted in bad faith.[8]

The Court in its independent judgment finds that Olario has damaged Eassa consisting of replacement of a refrigerator $2,500, replacement of a washer and dryer $2,100.00, and replacement of a wine fridge $1,400.00. Additionally, that repairs to the front of the house total $2,100.00 for a grand total of $8,100.00.

Other requests for damages by Eassa are denied, either (1) as the plaintiff failed in his burden of proof[9] or (2) or as damages related to Eassa's assumed risk in his online auction purchase as to not only the property's condition but also the risk of needing to evict its tenant-at- sufferance[10] or (3) under the American Rule[11] for payment of legal expense.

It is therefore **ORDERED** that Hesham Eassa is granted a non-dischargeable judgment in the amount of $8,100.00 against Michael James Olario pursuant to 11 U.S.C. § 523(a)(6) on the grounds set for the herein. It is additionally **ORDERED** that Hesham Eassa is granted a non-dischargeable judgment against Adrienne Christine Olario pursuant to 11 U.S.C. § 523(a)(6) on a default basis for failure to appear at trial.

A separate judgment will issue.

SIGNED 08/24/2026

Jeffrey Norman
United States Bankruptcy Judge

[8] The Court does not hold any debt non-dischargeable based on its bad faith holding; however, the Court holds that it does impact how the Court viewed the truth and veracity of Olario's testimony.
[9] The majority of the repairs.
[10] Repairs and legal fees.
[11] The American Rule requires each party in a legal case to pay their own attorney fees.